# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### DANVILLE DIVISION

| | | |
|---|---|---|
| DIANE M. RITZIE**,** | ) | |
| | ) | Case No. 4:04CV00039 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| J & J INVESTMENTS AND SALES, INC.; | ) | |
| CHAMPION HOME BUILDERS CO.; | ) | By: **Jackson L. Kiser** |
| JULIA JAMES and JOHN JAMES, | ) | Senior United States District Judge |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Before me now is Defendants J&J Investments and Sales, Inc.'s, Julia James', and John James' ("collectively, Defendants") Motion for Summary Judgment as to Counts III, V, and VIII of Plaintiff Diane M. Ritzie's ("Plaintiff") Complaint. The parties have briefed the issues and oral argument was held before this Court on Thursday, June 22, 2006, making the motion ripe for decision. For the reasons stated herein, Defendant's Motion for Summary Judgment will be **GRANTED** and Counts III, V, and VIII of Plaintiff's Complaint will be hereby **DISMISSED** with prejudice.

## I.     STATEMENT OF FACTS

Though the factual background to Plaintiff's entire case is rather lengthy and complex, the underlying facts relating to Counts III, V, and VIII of Plaintiff's Complaint can be summarized briefly. These facts, when viewed in the light most favorable to Plaintiff reveal that she met with Lisa Williams ("Williams"), an agent of Columbia National Bank ("Columbia National") on October 21, 2000 at Defendants' sales lot to finalize her home mortgage. Plaintiff

1

had thought that her mortgage would be financed by Chase Manhattan Bank ("Chase") but Williams assured her that Chase had sold her loan to Columbia National. Despite her misgivings, Plaintiff and Williams completed a Uniform Residential Loan Application for which Plaintiff was ultimately approved. According to Plaintiff's deposition, no one else was present when this conversation transpired. Also according to Plaintiff's deposition, she has no recollection of any of the Defendants taking part in or furthering her loan application process. It is undisputed that the Jameses are not licensed loan brokers in North Carolina.

Plaintiff moved her furniture and other possessions into the mobile home in January of 2001 but did not take up residence in it until April 12, 2001 which was the date of closing. Between January, 2001 and August 27, 2002, Plaintiff notified Defendants on multiple occasions of nonconformities and other deficiencies with her home. These included a lack of a vent for her dryer and holes under her three of her sinks which allowed mice to enter the home. Defendants made some attempts to fix the defects of which Plaintiff complained but they were either incomplete, ineffective, or otherwise not to Plaintiff's satisfaction. On August 27, 2002, Plaintiff sent notice to Defendants revoking her acceptance of the home. Plaintiff continued to occupy the home after she revoked acceptance and, sometime later, stopped making payments to Columbia National. Columbia National foreclosed on Plaintiff's home on March 11, 2003 and instituted an unlawful detainer action which was stayed when Plaintiff filed for bankruptcy under Chapter 13. The stay was lifted on March 26, 2004 and Plaintiff vacated the premises on April 14, 2004 when the Halifax County sheriff executed a writ of possession against her.

II.     STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issue exists as to any material fact

2

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987). Notwithstanding these inferences, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and entering summary judgment in the moving party's favor is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Lastly, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

## III.    PROCEDURAL HISTORY

Plaintiff originally filed her nine count Complaint in the United States District Court for the Middle District of North Carolina on February, 13, 2003 and the case was transferred to this Court on June 3, 2004. Since that time, there has been much procedural activity that is extraneous to resolving this summary judgment motion, therefore only the relevant procedural history will be discussed. After extensive discovery, the case was originally set to begin on December 5, 2005. However, at a pre-trial motion hearing on December 1, 2005, this Court

3

granted Plaintiff's attorney's motion to withdraw from the case. Plaintiff was ordered to find

new counsel by January 3, 2006 or else she would be presumed to be proceeding *pro se*. This

Court also ordered discovery in this case closed unless good cause could be shown to the

contrary. Plaintiff did not retain new counsel by January 3, 2006 and never made a motion to

reopen discovery. On May 5, 2006, Defendants filed their motion for summary judgment as to

Counts III, V, and VIII. These are the only three counts of Plaintiff's Complaint that have yet to

be resolved. On May 23, 2006, Plaintiff filed her Brief in Opposition, Defendants filed their

Reply on May 30, 2006, and Plaintiff filed supplemental exhibits on June 19, 2006. A hearing

on Defendants' motion was held before this Court on Thursday June 22, 2006 in Danville. Trial

is currently set to begin on July 27, 2006.

## IV.     DISCUSSION

### A.      *Count III*

Plaintiff has alleged in Count III of her Complaint that her mobile home was delivered

with defects that substantially impaired its value. When the defects were not seasonably cured,

Plaintiff revoked her acceptance of the home pursuant to Va. Code § 8.2-608. As stated above,

Plaintiff gave notice of the home's defects and nonconformities to Defendant as early as January,

2001 but did not revoke her acceptance of the home until August 27, 2002. As concerns

revoking acceptance of goods, the law of Virginia is clear that "what constitutes a reasonable

time depends upon the facts and circumstances of each case." *Gasque v. Mooers Motor Car Co.,*

*Inc.*, 227 Va. 154, 161 (1984). In the case of a mobile home, it is a close question that a nineteen

month delay between acceptance and revocation is "reasonable" under § 8.2-608. This is

especially true when the posture of the case is at the summary judgment stage when all facts and

4

reasonable inferences must be interpreted in the light most favorable to the non-moving party. In this light, the facts reveal that "the delay in notification of revocation [was] brought about because [Plaintiff] gave [Defendant] repeated opportunities to correct the defects and [Defendant] procrastinated in accomplishing repairs." *Id*. Thus, it could be that revoking acceptance nineteen months later would be reasonable under these circumstances.

Where Plaintiff's case must fail as a matter of law, however, is at the post-revocation stage. Though a buyer may properly revoke acceptance of a good, the "buyer holds the goods as bailee for the seller" and continuing to use the good can be "wrongful against the seller." *Id*. Such continued use is inconsistent with § 8.2-608's principles and purposes of allowing a buyer to revoke acceptance and has the effect of cancelling the buyer's revocation. *Id*. In this case, Plaintiff sent her letter of revocation to Defendant on August 27, 2002 but did not vacate the premises until ordered to do so by the Halifax County sheriff on April 14, 2004. This is a period of nearly twenty months and is simply unreasonable as a matter of law.

While it is true that the Virginia Supreme Court has acknowledged that when the revoked good is a mobile home an exception to the general rule may be appropriate because "departure from the home before resolving the litigation would cause undue hardship to the buyer and [] the buyer's continued occupancy might be the best means of safeguarding the property for a seller who refuses to take it back." *Id*. (citing *Minsel v. El Rancho Mobile Home Center Inc.,* 32 Mich.App. 10 (1971) (holding that buyers who lived in a mobile home for six weeks after revoking acceptance had not been inconsistent with the principles of revocation)).

This exception does not apply to the undisputed facts of this case because Columbia National instituted foreclosure proceedings almost immediately after Plaintiff became delinquent

5

in her mortgage payments.  Thus, this is not a case where the adverse party refused to take the mobile home back.  Similarly, there is no evidence that departing the mobile home would have caused an undue hardship to Plaintiff.  It is Plaintiff's burden to prove that her "unjustified use of the goods after giving notice of revocation" was reasonable, but Plaintiff has put forth no evidence of any undue hardship as it relates to finding another place of residence.  *Id.*  Indeed, there is no evidence that Plaintiff had any trouble finding alternate accommodations when she was ultimately evicted in April of 2004.  Finally, this case is clearly distinguishable from the facts of *Minsel* simply because the plaintiffs in that case resided a mere six weeks in the mobile home while Plaintiff in this case resided in the mobile home for nearly two years after revoking acceptance.  For all these reasons, Plaintiff's continued use of her mobile home from August of 2002 to April of 2004 was unreasonable and, by continuing to live there, she forfeited her legal remedies that stem from a proper revocation under § 8.2-608.  As a result, I will **GRANT** Defendant's motion for summary judgment as to Count III.

> B.     *Count V*

In Count V of her Complaint, Plaintiff alleged that John James committed a trespass upon her land.  Plaintiff now states on page six of her Brief in Opposition that "she is not seeking legal redress for the trespass by John James."  For this reason, it is appropriate to **GRANT** summary judgment in favor of John James as to Count V.

> C.     *Count VIII*

Count VIII of Plaintiff's Complaint charges Defendants with illegal loan brokering in violation of N.C. Gen. Stat.§§ 66-106, *et. seq.*  The statute defines a loan broker as "any person , firm, or corporation who, in return for any consideration from any person, promises to (i)

procure for such person, or assist such person in procuring, a loan from any third party; or (ii)

consider whether or not it will make a loan to such person." N.C. Gen. Stat. § 66-106. It is

axiomatic that an entity charged with illegal loan brokering cannot have violated the statute if it

fails to meet this definition. In this case, Plaintiff's Complaint and her Brief in Opposition fail to

provide any sort of genuine issue to buttress her claim that Defendants fit within the statutory

definition of loan broker. There is no evidence that Defendants agreed to procure a loan for

Plaintiff and, even if there were, there is no evidence that they agreed to do so for any

consideration. Instead, Plaintiff's own deposition testimony makes clear that Defendants were

not present when Williams and Plaintiff filled out the loan application. Further, her deposition

testimony also reveals that she does not remember any of the Defendants taking part in or in any

way furthering her loan application process. These statements are wholly consistent with

Plaintiff's answer to Defendants' Interrogatory 21:

> 21.    Please set forth with precision, as to the dollar amount, the (a)
> direct damages; (b) consequential damages; and/or (c) indirect
> damages you claimed to have sustained as a result of [Defendants]
> engaging in illegal loan brokering.

> **ANSWER**:
> Plaintiff cannot determine whether [Defendants] were brokers,
> therefore, no damage claim is stated.

In sum, there is no dispute that fitting within the statutory definition of § 66-106 is a

precondition to being sued for illegal loan brokering in North Carolina. There is simply no

genuine issue, however, as to this material fact. Plaintiff's own deposition testimony and her

answer to Interrogatory 21 reveal as much. Therefore, I will **GRANT** Defendants' motion for

summary judgment as to Count VIII.

V.    **CONCLUSION**

7

For the reasons stated above, Defendants' Motion for Summary Judgment will be **GRANTED**. Counts III, V, and III of Plaintiff's Complaint will be hereby **DISMISSED** with prejudice.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the attached Order to all counsel of record. The clerk is further directed to strike this matter and all outstanding motions from the Court's docket.

Entered this 6th day of July, 2006.

s/Jackson L. Kiser
Senior United States District Judge